UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALVIN A. AGARD,

       Petitioner,

v.

JEFFREY SEARLS,[1]

       Respondent.

23-CV-91-LJV
DECISION & ORDER

---

On January 30, 2023, Alvin A. Agard filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York ("Batavia").  Docket Item 1.  Agard has been detained in the custody of the United States Department of Homeland Security ("DHS") since July 22, 2022—more than 14 months.  Docket Item 7-1 at ¶ 32; Docket Item 21 at 2.  On August 18, 2023, the government moved to dismiss the petition on the grounds that Agard is detained under 8 U.S.C. § 1231(a)—not, as Agard contends, under 8 U.S.C. § 1226—and that his detention therefore is within the removal period deemed "presumptively reasonable."  Docket Item 18; Docket Item 18-1 at 2.  Because this Court agrees that Agard is now detained under § 1231(a), the government's motion is granted, and Agard's petition is dismissed without prejudice.

---

[1] Searls is sued in his official capacity as Officer-in-Charge at the Buffalo Federal Detention Facility in Batavia.  Docket Item 1 at 1.

## FACTUAL AND PROCEDURAL BACKGROUND

Agard, a native and citizen of Trinidad and Tobago, entered the United States on August 6, 2003.  Docket Item 7 at ¶ 3; Docket Item 1 at ¶ 2.  According to DHS, Agard initially entered on a non-immigrant B2 visa that expired in February 2004.  Docket Item 7 at ¶ 3.  Since that time, he has attempted to obtain legal status.  *Id.* at ¶¶ 10-12, 26.  Most recently, on April 13, 2021, Agard's wife, Lexis Cherise Newell, filed an I-130 petition on Agard's behalf.  *Id.* at ¶ 26.

On November 9, 2010, DHS served Agard with a "Notice to Appear," which stated that he had overstayed his visa and was removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA").  *Id.* at ¶ 7; Docket Item 7-2 at 10.  That removal proceeding was later closed after Agard's then-wife, Danielle L. Agard, filed an immediate relative visa petition on his behalf.  Docket Item 7 at ¶ 10-11.

On December 16, 2012, Agard was arrested for driving while intoxicated and operating a motor vehicle without a license; after pleading guilty, he was sentenced to 60 days in prison.  *Id.* at ¶ 15.  On October 5, 2013, Agard was arrested again, this time for criminal obstruction of breathing and assault with intent to cause physical injury; he later was convicted of these crimes and sentenced to a year in prison.  *Id.* at ¶ 20-21.  Then, in May 2022, Agard pleaded guilty to reckless endangerment and driving while intoxicated and was sentenced to another year in prison, which he began to serve in Rensselaer County Jail.[2]  *Id.* at ¶¶ 29-30; Docket Item 7-2 at 36-37.

---

[2] This account of Agard's criminal history is drawn largely from the briefs and records supplied by the government.  Agard has disputed some of this account, alleging, for instance, that the government has "offer[ed] no solid proof[,] only a made[ ]up chart" to show that he committed those crimes.  *See, e.g.*, Docket Item 13 at 9.  Elsewhere, Agard appears to concede that he was convicted of some of the crimes

2

On July 22, 2022, Agard was released from the county jail into ICE custody. Docket Item 7 at ¶ 30; Docket Item 7-2 at 39.  Four days later, DHS issued a "Notice of Custody Determination" requiring that Agard be held in custody during his immigration proceedings.  Docket Item 7 at ¶ 32.  In addition, DHS supplemented its previous removability determination with an additional charge of "deportability" under section 237(a)(2)(A)(ii) of the INA.  *Id.* at ¶ 33.  This provision renders removable any noncitizen who is convicted of more than one crime involving "moral turpitude."  8 U.S.C. § 1227(a)(2)(A)(ii).

On November 8, 2022, an Immigration Judge ordered that Agard be deported. Docket Item 1 at ¶ 37; Docket Item 7 at ¶ 35; Docket Item 7-2 at 44-46.  Agard then appealed that decision to the Board of Immigration Appeals ("BIA").  Docket Item 1 at ¶ 38; Docket Item 7 at ¶ 36; Docket Item 7-2 at 47.

On January 30, 2023, while his appeal to the BIA was pending, Agard filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Docket Item 1.  He alleged that he had been "subject to mandatory immigration detention for approximately [six] months" in violation of the Due Process Clause of the Fifth Amendment."  *Id.* at ¶¶ 5-7, 11.  Agard asked the Court to grant relief either by ordering his release or, at a

---

identified by the government but calls into question whether he was actually guilty.  *Id.* at 16-17.  Nevertheless, Agard does not directly challenge his removal order here; instead, he has sought review of that order—as he must under current law—by the Court of Appeals.  *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . ."); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) ("[S]ection 1252(a)(5) . . . clearly preclude[s] the district court's entertaining of a direct challenge to a removal order . . . .").  This Court's review therefore addresses only Agard's constitutional challenge to his confinement.

3

minimum, ordering a bond hearing on the lawfulness of his continued detention.  *Id.* at ¶ 11.

On April 3, 2023, the BIA dismissed Agard's appeal of his removal order.  Docket Item 9 at 1.  Agard then filed a petition for review in the United States Court of Appeals for the Second Circuit.  *Agard v. Garland*, Case No. 23-6347, Docket Item 1 (2d. Cir. Apr. 12, 2023).  He asked that court to stay his order of removal while his petition was pending.  *Id.*, Docket Item 9.  On July 24, 2023, the Second Circuit denied Agard's motion to stay.  *Id.*, Docket Item 26.  About two weeks later, Agard again asked the Second Circuit to stay his removal.  *Id.*, Docket Item 27.  According to Agard, this request was based on "newly available evidence," including the U.S. Citizenship and Immigration Services' approval of his wife's I-130 petition on his behalf on June 27, 2023.  Docket Item 17 at 1.  On September 14, 2023, the Second Circuit denied Agard's second motion for a stay.  *Garland*, Case No. 23-6347, Docket Item 34.  As of the date of this opinion, his petition for review in the Second Circuit remains pending.

In the meantime, on August 18, 2023, the government moved to dismiss Agard's petition for failure to state a claim.  Docket Item 18.  The government contends that because Agard's removal order is now "administratively final," Agard is detained under 8 U.S.C. § 1231(a), rendering his petition "premature."  Docket Item 18-1 at 3-4.  A few weeks later, Agard responded, arguing that he was detained under 8 U.S.C. § 1226—not section 1231(a)—and that his continued detention was unconstitutional.  Docket Item 21 at 1, 20.

Because Agard has been detained under § 1231(a) since the Second Circuit denied his motion to stay, his habeas petition is dismissed without prejudice.

4

**DISCUSSION**

I. **HABEAS PETITION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Agard is validly detained under 8 U.S.C. § 1231(a) as a noncitizen subject to a final order of removal.  Docket Item 18-1 at 2-4.  Agard disagrees, arguing that his "unreasonably prolonged" detention violates his right to due process under the Fifth Amendment of the U.S. Constitution.  Docket Item 1 at 1-2.  He asks this Court to grant relief either by ordering his release or by ordering a bond hearing in which the government must "bear[ ] the burden to prove by clear and convincing evidence that [Agard's] continued detention is necessary to prevent flight or danger to the community."  *Id.*

II. **STATUTORY BASIS FOR DETENTION**

To assess Agard's claims, the Court must first determine the statutory authority for Agard's detention at Batavia.  "Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).  Section 1231(a), on the other hand, applies to those noncitizens who have been determined to be removable.  *Id.* at 54-55.  This section provides for a "removal period," which it defines as the 90 days "following an order of removal during which 'the Attorney General shall remove the [noncitizen].'" *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).  Under the statute's explicit terms, this period begins "on the latest" of three possible dates:

5

>(i) The date the order of removal becomes administratively final.
>
>(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
>(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also*, *Hechavarria*, 891 F.3d at 54-55. So if the removal period has begun, the noncitizen is detained under section 1231(a); if it has not yet begun, the noncitizen is detained under section 1226. *Hechavarria*, 891 F.3d at 54-55.

Under the statute, a stay of a removal order effectively stops the removal period from running. 8 U.S.C. § 1231(a)(1)(B)(ii). And that means that "[s]ection 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review." *Hechavarria*, 891 F.2d at 56. Courts in the Second Circuit generally treat requests for stays as stays in this context. *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 796 (W.D.N.Y. 2019) (collecting cases). That is because under DHS's forbearance agreement with the Second Circuit, "DHS will not remove any [noncitizen] who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the [noncitizen's] stay motion is otherwise denied." *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019); *see also In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for the Second Cir.*, 702 F.3d 160, 162 (2d Cir. 2012) ("While a petition is pending in this Court, the [g]overnment's forbearance policy has assured that removal will not occur."). Accordingly, "the overwhelming majority of courts in this Circuit have found that the forbearance agreement amounts to a 'court order[ed] stay of . . . removal.'" *Ranchinskiy*, 422 F. Supp. 3d at 796 (quoting *Sankara*, 2019 WL

6

266462 at *4); see Falodun v. Session, 2019 WL 6522855, at *5 (W.D.N.Y. Dec. 4, 2019). In such cases, because there has been the equivalent of a stay but no "final order," as required by 8 U.S.C. § 1231(a)(1)(B)(ii), courts in this Circuit generally treat noncitizens with pending petitions for review as detained under section 1226. *Ranchinskiy*, 422 F. Supp. at 796.

But this case is different. Agard has asked the Second Circuit to review the BIA's decision and has twice asked that court to stay his removal. *Garland*, Case No. 23-6347, Docket Items 9 and 27. Twice, his request for a stay was denied. *Garland*, Case No. 23-6347, Docket Items 26 and 34. So although Agard's detention was governed by section 1226 while his motion for a stay was pending before the Second Circuit—or at least, while his first motion was pending[3]—that court's denial of his request for a stay means that the clock is no longer stopped under 8 U.S.C. § 1231(a)(1)(B)(ii). Instead, his order of removal is now "administratively final" under section 1231(a)(1)(B)(i).

In sum, for Agard, the 90-day "removal period" has begun, and his detention therefore is governed by section 1231(a).

---

[3] This Court need not reach the question of whether Agard's second request for a stay effectively stayed his removal under 8 U.S.C. § 1231(a)(1)(B)(ii). The government treated Agard's second request as a motion for reconsideration and stated that the forbearance policy did not apply. Docket Item 18-1 at 3. In contrast, Agard argues that the government cannot ignore the forbearance policy in this way and that his second request should be treated as effectively staying his removal order. Docket Item 21 at 1. Because that request was denied and Agard has no petition for a stay currently pending, however, this issue is moot. Further, as discussed below, precisely when Agard's statutory "removal period" began—July or September—has no bearing on the due process analysis, at least at present.

### III.     DUE PROCESS

Agard alleges that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at ¶ 7.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations and internal quotation marks omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id.*  "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id.* (citations and internal quotation marks omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

8

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyer v. Doe*, 457 U.S. 202, 210 (1982). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.     Procedural Due Process Claim

Agard challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at ¶¶ 24-56. He argues that his detention violates the Due Process Clause because he has been "detained for more than six months without a bond hearing"—a status quo that he contends "will continue . . . unless this Court grants . . . relief." *Id.* at ¶ 9. The standard that the Court applies to due process challenges depends on the statutory authority under which the challenger is detained. As discussed above, Agard now is detained under 8 U.S.C. § 1231(a). So his detention must be assessed according to the standards that apply to noncitizens with final orders of removal. *See Demore*, 538 U.S. at 527-28 (noting that the due process inquiry differs depending on whether the petitioner is held under section 1226 or section 1231).

Section 1231 provides that the government "shall detain" noncitizens with final orders of removal "[d]uring the removal period." 8 U.S.C. § 1231(a)(2). And it does not limit the government's power to detain *only* during the removal period. Noncitizens deemed to be inadmissible or removable under certain sections of the INA "may be detained beyond the removal period, and, if released, shall be subject to . . . terms of supervision" delineated elsewhere in the statute. *Id.* § 1231(a)(6). Taken on its own

terms, section 1231 endows the government with the power to detain "removable" noncitizens without setting any limits on the process that must be afforded to those held. *See Zadvydas*, 533 U.S. at 688-89.  But in *Zadvydas,* the Court responded to "constitutional concerns" that might arise when the statute is construed that way and instead interpreted it to "contain an implicit 'reasonable time' limitation." *Id.* at 682, 689.  And the Court deemed a removal period of up to six months to be "presumptively reasonable." [4]   *Id.* at 701.

### B.     Application to this Case

Agard's order of removal was effectively stayed while his motion for a stay—or, at least, his first motion for a stay—was pending before the Court of Appeals.  But when that motion was denied, his removal order became "administratively final" under 8 U.S.C. § 1231(a)(1)(B)(i), and the removal period began to run.  And whether Agard's second motion for a stay effectively restarted the clock is not dispositive here.  Regardless of whether Agard has been detained under § 1231(a) since July 24, 2023 (the date of the first denial, *see Garland*, Case No. 23-6347, Docket Item 26) or September 14, 2023 (the date of the second, *see Garland*, Case No. 23-6347, Docket Item 34), his detention is within the 90-day statutory removal period[5] and well within the

---

[4] Some courts have held that the "presumptively reasonable period of detention" includes the 90-day statutory period and an additional six months.  *See, e.g., Johnson v. Phillips*, 2010 WL 651 2350 (W.D.N.Y. 2010).  *But see D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 390 (W.D.N.Y. 2009) (stating that the six-month period includes the "90-day removal period plus three months").  Because Agard's detention is "reasonable" under Supreme Court precedent regardless of how the period is calculated, this Court does not reach that question.

[5] If calculated from the denial on July 24, 2023, the removal period will expire on October 22, 2023.

period deemed presumptively reasonable by the Supreme Court. *Zadvydas*, 533 U.S. at 701.

This does not mean that Agard's detention could never become unconstitutional. After the six-month period has expired, if a noncitizen detained under section 1231(a) shows "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the burden shifts to the government to rebut that evidence. *Id.* If the government cannot meet this burden, the noncitizen must be released. *Id.* at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). If Agard's detention continues beyond the period that is presumptively constitutional, he may again ask this Court for relief.

## **CONCLUSION**

Agard's section 1231 detention is within the six-month period that the Supreme Court has declared to be constitutional. *Id.* at 701. Accordingly, his detention has not been unreasonably prolonged.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that the government's motion to dismiss is GRANTED; and it is further

ORDERED that Agard's petition for a writ of habeas corpus is DENIED without prejudice.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated: October 18, 2023
 Buffalo, New York

 */s/ Lawrence J. Vilardo*
 LAWRENCE J. VILARDO
 UNITED STATES DISTRICT JUDGE